## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHERISE C.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.** 24 C 11199 |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| LELAND DUDEK, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§416(i), 423, 1381a, 1382c, about three and a half years ago in December 2021, alleging she became disabled on May 20, 2020 (Administrative Record (R.) 223, 229) due to "Depression; Anxiety; Multiple myeloma; Peripheral nerve disorder; chronic nerve pain; Plaque psoriasis; Foreign body of orbit; Fibromyalgia; Thoracic outlet syndrome." (R. 243). Over the next two and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on October 30, 2024, and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on November 5, 2024. [Dkt. #6]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an Order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

After an Administrative Hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: fibromyalgia, psoriatic arthritis, degenerative joint disease of the lumbar and cervical spine, anxiety, and major depressive disorder. (R. 17). The ALJ then determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listings 1.15 and 1.16 with respect to the spine, and 12.04 and 12.06 with respect to anxiety and depression. (R. 18-19). The ALJ found that the plaintiff had mild limitations in understanding, remembering or applying information and adapting or managing oneself; and moderate limitations in interacting with others; and concentrating, persisting or maintaining pace. (R. 19-20).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to capacity to perform light work with the following limitations:

> she can occasionally climb ramps or stairs, and occasionally stoop and crawl, but never climb ladders, ropes, or scaffolds. She can frequently handle bilaterally and frequently reach in all directions bilaterally. The [plaintiff] can tolerate a moderate noise level environment, as defined by the DOT. She must avoid extreme cold and heat, must avoid working with vibrating equipment, must avoid concentrated exposure to wetness, and must avoid unprotected heights. She is capable of performing simple tasks and making simple work-related decisions. She cannot perform production rate or pace work such as assembly line work. She can occasionally interact with the general public.

(R. 20-21). The ALJ then summarized the plaintiff's testimony, but found that while the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 21-22). The ALJ then summarized the medical evidence including the opinions from the state agency reviewing physicians and psychologists. The ALJ found the physicians' opinions persuasive, but added greater limitations based on the medical evidence and the plaintiff's complaints of pain. (R. 22-25). The ALJ found the psychologists' opinions persuasive, rejected the opinions from plaintiff's treating physician as unsupported by the doctor's treatment notes. (R. 27-28).

Next, the ALJ relied on the testimony of the vocational expert to find that the plaintiff could not perform her past work as administrative assistant or a telecommunicator because the skill level of those jobs exceeded the skill level of the plaintiff's residual functional capacity. (R. 30). The ALJ then further relied on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that plaintiff could perform. Examples of such jobs were: mail clerk (DOT# 209.687-026/light/SVP 2/with approximately 30,000 jobs in the national economy), garment sorter (DOT# 222.687-014/light/SVP 2/with approximately 22,000 jobs in the national economy), and cafeteria attendant (DOT# 311.677-010/light/SVP 2/with approximately 30,000 jobs in the national economy). (R. 31). Accordingly, the ALJ concluded that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 36).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not

a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what has come to be known as a "logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th

4

Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). While this requirement has been described as "lax", *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. Indeed, the Seventh Circuit's

opinion in *Jarnutowski*,  48 F.4th 769, exemplifies this subjectivity.  Two judges on that panel felt the ALJ had not adequately explained aspects of her reasoning, while a third judge, dissenting, thought she did, as did the Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).  The result was similar in *Swiecichowski v. Dudek*, 133 F.4th 751(7th Cir. 2025), with two judges feeling the ALJ had not provided enough of a logical bridge, and one – along with the magistrate judge below, *Swiecichowski v. Kijakazi*, No. 21-CV-249-SCD, 2022 WL 2069251, at *6 (E.D. Wis. May 27, 2022) – being able to follow the ALJ's reasoning.

Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court explained that the ALJ had to:

> explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287.

6

More recently, the Seventh Circuit has again emphasized that all ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The court has explained "that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. May 31, 2024)(". . . ALJs are 'subject to only the most minimal of articulation requirements'—an obligation that extends no further than grounding a decision in substantial evidence."). So, as ever, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). In this instance, the ALJ has done enough.

### III.

The plaintiff raises a handful of arguments in support of remanding the ALJ's denial of her application for disability benefits. First, she argues that the ALJ failed to account for the state agency reviewing psychologist's opinion that the plaintiff had difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time. Second, she contends that the ALJ failed to properly assess the limitations she has using her hands. Third, plaintiff claims that the ALJ failed to properly assess the opinion from her counselor. And, finally, the plaintiff contends that the ALJ failed to properly assess her allegations regarding the severity of her symptoms. Any other arguments the plaintiff might have raised are, of course, deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022)("Arguments not raised in the district court are waived."); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020)("... arguments omitted before the district court are [waived].").

## A.

The plaintiff begins by arguing that the ALJ, despite accepting the opinion from state agency reviewing psychologist Dr.Tin as "persuasive", failed to account for the limitations that Dr. Tin set out. The plaintiff cites Dr. Tin as having found that she "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." [Dkt. #13, at 5 (citing R. 101-02); (R. 113). The plaintiff complains that the ALJ found she was capable of performing simple tasks, but omitted that she "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time." [Dkt. #13, at 5-6]. But, the plaintiff's argument seems to be based on a misreading of Dr. Tin's assessment.

The key word there is "however." In other words, it's rather clear that Dr. Tin felt that plaintiff could perform simple tasks *despite* her specific limitations like having trouble with detailed instructions or extended periods of concentration. Those specific limitations are subsumed into his conclusion that there was nothing preventing the plaintiff from performing simple tasks. Dr. Tin provided "a bottom line" and the ALJ not only made it part of her RFC finding, but part of her hypothetical to the vocational expert as well. That bottom line "adequately encapsulate[d] and translate[d]" Dr. Tin's overall findings. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). As such, contrary to the plaintiff's take, the ALJ didn't commit the faux pas discussed in *Charles N. v. O'Malley*, No. 22 C 6749, 2024 WL 3581902, at *6-7 (N.D. Ill. July 30, 2024), where the ALJ's RFC – a limitation to one- or two-step simple, routine and repetitive tasks – was different from the hypothetical offered to the vocational expert, which included no limitation regarding steps.

8

Plaintiff briefly suggests that because the three jobs the vocational expert cited are "Reasoning Level 2", requiring the ability to carry out "detailed but uninvolved instructions", the plaintiff would not be able to perform those jobs. But, again, the bottom line is "simple tasks" and the vocational expert testified that a limitation to simple tasks did not rule out jobs like mail clerk, garment sorter, and cafeteria attendant. (R. 69-70). And, the Seventh Circuit has "gone as far as to say that there is no apparent conflict between a simple tasks limitations and level 3 reasoning—a more demanding standard than level 2." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020). Plaintiff raises a similarly brief objection that the ALJ's limitation to no production rate or pace work did not account for the state agency reviewer's finding that plaintiff would have difficulty maintaining extended periods of concentration. As before, that limitation was subsumed into the reviewer's ultimate conclusion that the plaintiff could perform simple tasks. And, the ALJ imposed the additional "production rate" limitation, as an accommodation to plaintiff's anxiety, which makes perfect sense. (R. 28). If one is overly susceptible to stress or anxiety, they would not fare well next to Lucy and Ethel on the candy-wrapping line. *See, e.g., Jason B. v. Kijakazi*, No. 22 C 1850, 2023 WL 1992188, at *5 (N.D. Ill. Feb. 14, 2023); *Kendzion v. Colvin*, No. 13 C 4820, 2014 WL 5448670, at *6 (N.D. Ill. Oct. 27, 2014).

**B.**

Next, the plaintiff complains that while the ALJ found the state agency reviewing physicians' opinions regarding plaintiff's physical capabilities "persuasive", she found "greater limitations are warranted due to the psoriasis and complaints of pain." [Dkt. #13, at 7 (citing R. 25)]. This is a bit confusing because the way the argument is couched, it appears to be one of those "quizzical arguments" plaintiffs' attorneys raise every now and then, challenging an ALJ for imposing greater

restrictions than the evidence requires. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)("This finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [plaintiff] presented."); *Aubrey L. v. O'Malley*, No. 24 C 7055, 2025 WL 461437, at *5 (N.D. Ill. Feb. 11, 2025)(" . . . the two reviewing psychologists found that the plaintiff could tolerate 'limited sustained contact with co-workers and the public.' The ALJ went a bit further in terms of the general public, ruling out any interaction instead of merely limiting interaction. Surely, the plaintiff cannot complain about that."); *Karla J.B. v. Saul*, No. 19 CV 50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020)("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument."); *Ricky L. v. O'Malley*, No. 23 C 6006, 2024 WL 3848552, at *11-12 (N.D. Ill. Aug. 16, 2024)("Is the plaintiff asking that the case be remanded so that the ALJ could offer a . . . finding that the plaintiff suffered no more than minimal restrictions? It's difficult to see what good that would do for the plaintiff. It is, as former Magistrate Judge – now District Court Judge – Iain Johnston aptly put it, a 'quizzical argument.'").

The plaintiff goes on to argue that the additional limitation the ALJ provided – no more than frequent handling and reaching – did not go far enough. But, the ALJ summarized the evidence regarding plaintiff's psoriasis, and noted normal exam results and little or no mention of any difficulties using her hands. (R. 23-24, 25-26). What plaintiff really seems to want is a non-specific handling and manipulating restriction that is not dictated by the record. An ALJ need only provide restrictions that are supported by the medical evidence, *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019),and that's what the ALJ did here.

10

Moreover, it is up to the plaintiff to articulate whatever additional limitations she thinks are supported by the record. *See, e.g., Streikus v. O'Malley*, No. 22-2484, 2024 WL 983568, at *5 (7th Cir. Mar. 7, 2024)("[Plaintiff] does not point to any evidence demonstrating that he requires greater limitations than those identified in the RFC; nor, for that matter, does [plaintiff] articulate what additional limitations are needed."); *Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address [plaintiff's] limitations . . . because [s]he hypothesizes none [and] cites no evidence that [her impairments] keep h[er] from performing simple, routine, and repetitive tasks."). While the plaintiff cites a couple of instances where her psoriasis flared up in March and July of 2021 (R. 646, 853), doctors did not assess any limitations on those occasions.[2]

More importantly, plaintiff ignores the many instances in the record where there were no problems with her hands:

> May 22, 2019 full skin exam, since neck injections psoriasis has gone away (R. 1171); Hands and feet clear (R. 1172);

> August 28, 2020 – psoriasis gone after neck injection (R. 863);

> March 3, 2021 – plaintiff said when she had steroid neck injection her psoriasis disappeared (R. 1162);

> October 18, 2021 – no skin lesions or rashes (R.1197);

> November 15, 2021 – no skin lesions or rashes (R.1190);

---

[2] This is not to say that plaintiff's hands weren't sore at those times or that she was able to use them without any difficulty. But, that doesn't mean she is disabled. The plaintiff is heading into her fifties. People working without pain or discomfort, especially after age 50, are few and far between, even in sedentary jobs. *Amy P. v. O'Malley*, No. 21 C 3557, 2024 WL 1013985, at *8 (N.D. Ill. Mar. 8, 2024). If pain or discomfort while working was all it took to qualify for disability benefits, "eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2nd Cir. 1983); *see also Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)(affirming ALJ's decision noting that "[d]isability requires more than mere inability to work without pain."); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)("Even if [plaintiff] did experience some discomfort, this alone does not establish disability."); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) ("... disability requires more than mere inability to work without pain").

September 14, 2022 – normal extremities exam; psoriasis stable with present treatment (R. 1107);

October 6, 2022 – normal extremities exam; psoriasis stable with present treatment (R. 1100-01);

February 21, 2023 – no unusual skin lesions, rash, itchiness (R. 1089);

March 24, 2023 – no rashes or lesions (R. 1497, 1839);

April 23, 2023 – Extremities, no edema no calf pain, No ulcers, pulses palpable bilateral, +right lower leg chronic psoriasis rash (R. 1502);

July 6, 2023 – examination of extremities normal; psoriasis stable; continue present management (R. 1773-74).

Indeed, even one of plaintiff's treating physicians, Dr. Khudai – who saw plaintiff every four to six months – checked "no significant limitations with reaching, handling or fingering" on a form provided by the plaintiff's attorney. (R. 1707). And, as the ALJ indicated, the only other examining doctor to assess whether plaintiff was limited in use of her hands, the consultative examiner, noted her grip strength was 5/5 in both hands, her dexterity was normal, her ability to grasp and manipulate was normal, and her ability to make fists and oppose fingers was normal. (R. 998).

Yes, psoriasis is cyclical, as the plaintiff argues, but that doesn't mean it's automatically disabling. A diagnosis is not the same as a disability. *See, e.g., Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). What matters is the severity of the condition and how it limits plaintiff's capacity to work as based on clinical and/or laboratory findings. *See Elder*, 529 F.3d at 415 ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions

12

of hers but their severity...."). It is incumbent upon the plaintiff to show her psoriasis is disabling with medical evidence. *Gedatus*, 994 F.3d at 905; *Karr*, 989 F.3d at 513 (7th Cir. 2021)(plaintiff must "identify[ ] ... objective evidence in the record" that she is disabled); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Two or three flare-ups noted by doctors over the course of four years does not get that job done, especially given the balance of the record which supports the ALJ's determination.

The problem here is that the plaintiff never grapples with the substantial evidence that weighs against her claim. *See Morales*, 103 F.4th at 471 ("To warrant reversal, [plaintiff] must show that the ALJ's determination was not supported by substantial evidence.... And there is no way to satisfy that burden without grappling with the evidence ...."). The plaintiff's failure to come to grips with the normal examination findings and lack of any assessed limitations in her medical record is perhaps best highlighted by her reference to the court's discussion of handling limitations and the dexterity and manipulation requirements of jobs like "garment sorter" or "mail clerk" in *Antoine B. v. O'Malley*, No. 23 C 5634, 2024 WL 2831508, at *7 (N.D. Ill. June 4, 2024). [Dkt. #13, at 10]. It's an inapt comparison because the medical in *Antoine B* wasn't filled with clinical findings like "psoriasis has gone away", "psoriasis gone", "psoriasis disappeared", "no skin lesions or rashes", or "no significant limitations with reaching, handling or fingering." It was the medical record of plaintiff missing his index finger, middle finger, and much of his palm on his dominant hand. His hand was, essentially, an "L." *Antoine B.*, 2024 WL 2831508, at *7. Any comparison between the medical record there and the medical record here is unrealistic at best. It's entirely logical to that the plaintiff in *Antoine B* would have significant limitations handling things. What limitations does the plaintiff here suggest flow logically from repeated findings of "no rashes", "no lesions", or "psoriasis

gone"?  Perhaps tellingly, she doesn't suggest any.

## C.

Plaintiff next argues that the ALJ failed to properly assess the opinion of Licensed Clinical Professional Counselor Ms. Vaughn.  It has to be said that the ALJ got off on the wrong foot when she claimed Ms. Vaughan was not an acceptable medical source. (R. 28).  As the Commissioner concedes [Dkt. #17, at 12], the ALJ was working from an old regulation and was wrong about that. 20 C.F.R. §§ 404.1520c; 404.1502(d).  But, beyond that, the ALJ's reasons for dismissing Ms. Vaughan's rather dire assessment of the plaintiff's psychological state were valid.

The plaintiff complains that the ALJ went against Seventh Circuit precedent when she said that the very extreme limitations Ms. Vaughan cataloged were "somewhat inconsistent with the [plaintiff's] reporting that she was trying to find employment." (R. 28).  [Dkt. # 13, at 11-12].  Note that, unlike the ALJ taken to task by the Seventh Circuit in *Gerstner v. Berryhill*, 879 F.3d 257 (7th Cir. 2018), the ALJ did not say that a job search "suggest[ed] that [the plaintiff] did indeed retain the ability to perform work-related activities."  879 F.3d at 265.  She said looking for a job and being what Ms. Vaughan rated as rather severe limitations in functioning in many areas (R. 1005-06) were "somewhat inconsistent."  It's hard to convincingly argue otherwise.

The plaintiff has a similar gripe about the ALJ mentioning that plaintiff saying that she was both caring for her ill mother and unable to care for her ill mother. [Dkt. #13, at 12].  But, contrary to the manner in which the plaintiff took it, citing *Beardsley v. Colvin*, 758 F.3d 834, 838-39 (7th Cir. 2014) (ALJ erred in relying on the claimant's care for her mother when it was unclear how that care was inconsistent with limitations at issue), the ALJ didn't say that the fact that plaintiff was caring for her ill mother was inconsistent with an inability to work.  The ALJ merely noted that the

plaintiff's reports to Ms. Vaughn about being unable to care for her mother were inconsistent with her other reports that she was. (R. 28, 1230, 1711). A more careful reading of the ALJ's opinion suggests that perhaps the ALJ wondered about whether Ms. Vaughn simply accepted the plaintiff's subjective reports too uncritically. *See, e.g., Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)(proper to reject opinion from psychologist as it "largely reflected [plaintiff's] subjective reporting."); *see also Shannon M. v. Saul*, No. 18 C 7074, 2020 WL 264522, at *12 (N.D. Ill. Jan. 17, 2020)(doctor's opinion on shaky ground when it accepts plaintiff as a reliable historian when she isn't).

To be fair, if those had been the only reasons the ALJ had for rejecting Ms. Vaughn's opinion, the plaintiff might have had a point about the ALJ dismissing Ms. Vaughn's opinion. But, those weren't the only reasons the ALJ provided. As the ALJ pointed out, there is a stark disconnect between Ms. Vaughn's rather dire assessment of plaintiff psychological condition and those of every other healthcare professional. In visit after visit, plaintiff denies any symptoms or is found to be normal:

> April 16, 2020 – mood and affect normal; anxiety medication working quite well (R. 887-88);
>
> October 18, 2021– denies depressed mood, anxiety (R. 1197);
>
> November 15, 2021– denies depressed mood, anxiety (R. 1190);
>
> September 14, 2022 – denies depression, anxiety, change in sleep patterns (R. 1104);
>
> October 6, 2022 – mild episode of depression anxiety disorder, condition stable on medication (R. 1101);
>
> January 26, 2023 – mood affect appropriate (R. 1047);
>
> February 21, 2023 – denies depression or anxiety, mood is good mood and affect

15

appropriate (R. 1089);

April 3, 2023 – no anxiety, memory intact; mood normal (R. 1454, 1457);

July 20, 2023 – mood calm, appears comfortable (R. 1747)

Once again, the plaintiff simply ignores these records, asserting that psychological impairments – like psoriasis – are cyclical. But, as with plaintiff's psoriasis, this is not a matter of the ALJ cherry-picking one or two positive findings. It's a matter of the *plaintiff* doing the cherry-picking and the positive findings in the record far outweighing the negative. A lack of consistency with the rest of the record was a valid reason for the ALJ to reject Ms. Vaughn's opinion. *Bakke*, 62 F.4th at 1068; *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch*, 981 F.3d at 602.

It doesn't help Ms. Vaughn's opinion that she has no contemporaneous treatment notes. "A doctor's opinion is only as good as its basis in treatment records." *Michael K. v. Saul*, No. 20 C 2696, 2020 WL 7337821, at *8 (N.D. Ill. Dec. 14, 2020)(citing *Winsted*, 923 F.3d at 478; *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). What Ms. Vaughn provided what looks to be a log consisting of a brief summary for each month's worth of sessions. It is perhaps taken from contemporaneous notes, perhaps not, but the absence of any contemporaneous treatment notes detracts from her assessment. *See, e.g., Ebony S. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1043, 2023 WL 7401227, at *6 (S.D. Ohio Nov. 9, 2023)(". . . a lack of contemporaneous medical records from an opinion provider is an appropriate supportability consideration."); *Bruza v. Comm'r of Soc. Sec.*, No. 1:07-cv-1027, 2008 WL 3979261, at *6 (W.D. Mich. Aug. 4, 2008) ("The absence of progress notes and other contemporaneous medical records regarding the treatment provided by [a physician] for the period at issue entitles his unadorned opinion to virtually no weight."). But, either way, those summaries have little or nothing in common with the rest of the medical record.

16

Then there is the problem that Ms. Vaughn's log of summaries has little or little or nothing in common with the rest of the medical record. For example, for the month of October 2022, Ms. Vaughn writes:

> Doing this reporting, client expressed overwhelming feelings of sadness and failure. Client reported that she has minimum support from her family and friends and her living condition is going to get worse if she is not able to care for herself she reported that she has tried to find employment and safe living environment and continue to struggle with finding and being able to what she describes as physically and emotionally being able to be responsible for day-to-day activity.

(R. 1710). So, according to Ms. Vaughn's summary, the plaintiff was claiming to be suffering *overwhelming* sadness and failure throughout the month. But, for the same time period, plaintiff told her treating doctor that she has *no* depression or anxiety, or only *mild* depression, and her doctors assessed her condition as stable on medication. (R. 1101, 1104). If plaintiff was overwhelmingly depressed for a month, as Ms. Vaughn's summary suggests, surely plaintiff would have mentioned it to the doctor who is prescribing her psychotropic medication. Ms. Vaughn's summary also indicated that March 2023 was "especially emotional for the" plaintiff and she was "experiencing extreme emotional anxiety and depression." (R. 1712). But, again, the plaintiff denied anxiety or depression to her doctor around that period. (R. 1454, 1457,1089). As the ALJ indicated, whether one looks at Ms. Vaughn's opinion or her monthly narratives, there is a lack of consistency with the rest of the record. That was reason enough for the ALJ to find Ms. Vaughn's opinion unpersuasive. *Bakke*, 62 F.4th at 1068; *Prill*, 23 F.4th at 751; *Zoch*, 981 F.3d at 602.

## D.

Finally, the plaintiff argues that the ALJ failed to properly assess her allegations regarding the severity of her symptoms. The plaintiff claims that, in finding that the overall medical record

did not support the degree of limitations the plaintiff claimed, the ALJ cherry-picked a select few office notes with positive comments. But, as already discussed, the record – which the ALJ summarized at length, *see Grotts*, 27 F.4th at 1278 ("Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate."); *Gedatus*, 994 F.3d at 901 – includes far more than a few unremarkable findings or denials of symptoms. It's not a question of a cherry or two, it's a matter of a cherry tree. Here, it was entirely appropriate for the ALJ to find that the degree of symptoms the plaintiff claimed to experience was not in line with the medical record. *Grotts*, 27 F.4th at 1278-79 (7th Cir. 2022); *see also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008)(". . . discrepancies between objective evidence and self-reports may suggest symptom exaggeration."); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)(". . . a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration.").

When it comes down to it, there are at least two problems with the plaintiff's argument that the ALJ improperly rejected her allegations. The first problem is rather significant and should be apparent to anyone who reviewed the medical record and read the transcript of the plaintiff's testimony at her administrative hearing. The plaintiff is ether a poor historian to her doctors, or was an unreliable witness at her hearing, or some combination of both. The plaintiff's brief, as has been noted, asserts that her psoriasis and her anxiety/depressive disorder are cyclical, and argues that as such, an ALJ is not allowed to note treatment records that say she is fine, or nearly so, even if such reports occur over and over. As has been explained, such an argument can't be accepted or every cyclical impairment would have to automatically be regarded as disabling. But, the argument is even more flawed than that because it contradicts the plaintiff's own testimony at her hearing.

The thing is, at her hearing, the plaintiff did not testify that her psoriasis and her anxiety/depressive disorder were cyclical. She testified that they plagued her constantly or nearly so. Obviously, such a claim is completely undermined by even a couple of normal exams, let alone many, as the ALJ pointed out in her opinion. The ALJ even sought to highlight this inconsistency problem at the hearing when discussing the plaintiff's psoriasis:

> ALJ: . . . the psoriasis, it looks like that cleared up with the injections and I didn't see any more notes of that in '22, '23. Then there was some other issues –
>
> PLTF: That did not clear up, the psoriasis? We attempted to with –
>
> ALJ: So why did you tell the doctor that it went away? You told the doctor – actually, even before you onset date, and then, even as late as August of 2020,that the psoriasis was gone after you had the injections. And then again, in March 2021.
>
> PLTF: We did have some clarity, but never was completely gone, and it comes back ten-fold. I'm on injections again to try and get the – yeah.
>
> ALJ: Any reason you wouldn't report that to your doctor, but saying that here for your disability hearing?
>
>        *     *     *
>
> Because in September of '22, there was an October visit – noted no rashes or lesions. There was even a February 2023 visit – this was an OBGYN visit, scan noted as normal with no rashes of lesions.
>
> PLTF: I'm not exactly sure why that is, but it sounds like we don't have the most updated visit, which was apparently - -
>
> ALJ: That could be one thing or that could be what the doctor noted, no rashes or lesions.
>
> PLTF: I am not sure why considering I'm on shots again for psoriasis.

(R. 41-42).

The plaintiff' testimony regarding her depression and panic attacks was similar. According to her, they were constant, not cyclical:

> ALJ: So and the diagnosis of generalized anxiety disorder, depression, panic disorder. So can you explain what your symptoms are, how often they occur, how they affect you?
>
> PLTF: So, I do have panic attacks, probably most – daily. And the depression is constant, and I have like – it's like (INAUDIBLE), you know the thoughts, and things like that, that really just don't go away.
>
>         \*       \*       \*
>
> I mean, it's a constant, like, panic to be in the situation, like, of not knowing, and then, knowing of things. So, yeah it's a constant thing.

(R. 60). But, of course, as has been seen, it was not "a constant thing." At least not when the plaintiff saw her doctors.

The other problem is, again, a matter of the plaintiff failing to grapple with the evidence. *Morales*, 103 F.4th at 471. This is perhaps best highlighted by the plaintiff's final criticism –or perhaps it ought to be called a nit-pick – of the ALJ's opinion. The plaintiff complains that the ALJ said that she:

> has been quite non-compliant with follow-up visits." (AR 29, referring to AR 617.) It is unclear what on this page prompted the ALJ to find that she had been "quite non-compliant." (AR 617.) Ms. Coffey was given general instructions on dealing with fibromyalgia and an MRI was ordered, which it is unquestioned Ms. Coffey could not do because of a metallic pellet lodged near her eye. (AR 617, 1031-32.)

[Dkt. #13, at 14]. But the plaintiff is way off the mark here. It's not at all "unclear" what "prompted the ALJ to find she had been 'quite' non-compliant." The ALJ was merely quoting one of plaintiff's treating physicians who quite literally said plaintiff wasn't just non-compliant but was "*quite* non-compliant non-compliant with follow-up visits." (R. 888 (emphasis added)). The ALJ cited to the proper exhibit, 1F/548, not once, *but twice*. (R. 22, 29). Still, the plaintiff seems to have gotten mixed up and somehow landed at 1F/277 (R. 617), directed the court to that wrong page, and built a concluding argument around the mistake. Everyone makes mistakes, of course, and plaintiff does

a little backpedaling in her reply brief but, overall, the plaintiff's critiques of the ALJ's opinion suggest she was looking too hard for a tree or two and failing to appreciate the forest. *See Jones-Ward v. Barnhart*, No. 01 C 9026, 2003 WL 22839821, at *8 (N.D. Ill. Nov. 25, 2003) ("Many of plaintiff's criticisms of the ALJ's decision are, as already noted, based on mischaracterizations or misunderstandings of the record, which tends to suggest that plaintiff can find very little at all wrong with the ALJ's decision.").

In order to overturn an ALJ's assessment of a plaintiff's symptom allegations, a plaintiff has to show that it was "patently wrong." *Tutwiler*, 87 F.4th at 859; *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). That means that the ALJ's determination lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024). That's clearly not the case here, where the ALJ correctly explained that the plaintiff's allegations simply did not align with most of her doctors' findings or even with what she told her doctors. The plaintiff does pull at a couple of other threads of the ALJ's assessment – the ALJ mentioning her looking for work and her inconsistent statements about caring for her mother – but no matter. Even if the ALJ erred in her analysis of some factors – and the court isn't saying she did – there is adequate supporting evidence for this court to uphold her credibility determination. *Tutwiler*, 87 F.4th at 859; *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility determination despite disagreeing with some underlying reasons for that decision).

21

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #16] is granted, the plaintiff's Social Security Motion [Dkt. #13] is denied, and the ALJ's decision is affirmed.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 4-30-25